But then there was cross-examination, and he brings in that there's a telephone call, and he checked on it. Was there a motion to strike? And was that responsive? There was no motion to strike. Our contention is that the hearsay testimony of an unidentified agent, without actually producing the judgment of conviction, is insufficient to establish that, in fact, Mr. Ortuno-Higareda committed that offense. I understand your argument, but you didn't object to it. No, that's correct. I did not. Isn't it waived? I don't believe it is, because we sought, in fact, to have the agent produce the judgment. Well, all you had to do is move to strike, and the judge would have granted it because it was hearsay, or you'd had it preserved. But if you don't move to strike, if you don't object, you haven't given the other side an opportunity to shore up. And it looks like to me it's a straight waiver. What case do you rely on that that isn't a waiver? Morrissey v. Brewer, Your Honor. In that case, hearsay testimony, generally speaking, is inadmissible unless the government establishes why they can't bring in that testimony or that evidence. In this instance, all we had was an agent who testified that he had talked with someone and that this was evidence of the conviction. The counsel hearsay is admissible in a parole replication hearing. If it's reliable, yes. In this instance, we're contending that it was unreliable. And following the hearing, I submitted those objections to the magistrate, and they were overruled. But our contention was that it was unreliable because we didn't even know who the officer was and, in fact, whether such a conviction existed. In fact, I think the agent testified that his belief was that such a conviction document existed, although there was not any evidence of it in the A file. Counsel, the evidence of the conviction, of course, if we had the judgment from the conviction, that would be you admit that that would be sufficient to show that your client had violated the terms of his parole. In this instance, yes, because the allegation was that he had committed the offense of illegal entry after deportation. The condition that was placed on your client was not that he be convicted of a crime, but that he not commit any crime. So that must be shown by a preponderance of the evidence. Isn't that correct? It can be shown by a preponderance of the evidence. However, the petition, in its item 4 in the excerpt of record, is the petition specifically alleges that he committed this offense, that he violated his conditions at the least by returning to the United States unlawfully. And the only evidence of that was that he had been arrested. The government contends that that's sufficient to prove that that's what he did. Okay. I want to make sure I'm very clear on this. We don't have, the government does not have to show, the court would not have to find that by, by, by preponderance of the evidence that he was convicted of a crime. I think you would only have to find by a preponderance of the evidence that he committed the crime. Which means that technically then, he could actually have been acquitted of the crime, of illegal entry into the United States, because he failed to satisfy, because the government failed to satisfy a burden of beyond a reasonable doubt. But as an administrative matter, the government might still be able to find by a preponderance of the evidence that he had committed the crime. I, I suppose that's true, but in this instance, the petition alleged, I think specifically, that he had committed the offense in that he had been arrested. And our, our contention is that being arrested is not evidence of a violation of supervised release. The, the specific condition that was indicated to have been violated was that he committed a new state, federal, or local offense, specifically that he had re-entered the United States. And, and for that reason, we're contending that the only way to prove that conviction, or the, the appropriate way to prove that conviction was, in fact, to provide a copy of the conviction and not to rely solely. Let, let's suppose that he was charged, but he was never tried. The government has no way of, of, of dealing with this? I, I think they do, but they have to have a witness who has actual knowledge of the facts and circumstances. They can't rely solely on hearsay knowledge or hearsay testimony of what another agent reportedly said. Okay, but if we had the arrest records, or we had, we had the officer who had arrested him, that, would that be sufficient? It would be admissible. It would be admissible. I don't know whether it would be sufficient, because we wouldn't know what the officer would say, other than that he found him in the United States. And whatever circumstances he's relying on to establish that he, that he committed that. Do, do you deny that your client was in the United States? I don't deny it, because he was transported from California to Arizona on the basis of a petition. Are there any circumstances under which you would have been lawful for your client to have crossed the border from Mexico back into the United States? To be honest with you, I don't know. But I suppose that simply being deported from the United States is not an automatic exclusion for all purposes and for all time. There are, there certainly are some circumstances under which somebody can return to the United States lawfully. Even, even if he's been ordered not to come back into the United States? Well, the condition usually is that you not return to the United States without the expressed lawful condition or, or permission from the Attorney General or from the Homeland Security Office. Okay. And he didn't, but he didn't have express permission. Well, we don't know. Was there any evidence adduced to that effect? There was none. The only evidence that was adduced was that he was arrested in the United, in Otey Mesa in California. The, if I may, the other contention that we have is that the statute in Ortega-Brito, this court ordered or encouraged the district courts and the probation officers to comply with the provisions of section 3583F and 3603 subsection 1, which basically are that the defendant be provided with a copy of the conditions of his release or supervised release. And in Ortega-Brito, that wasn't done. And this court, relying on the fact that there was, in fact, actual notice by the judge, said, in essence, we're finding in this case that there is no error. But the court encouraged district courts and probation officers to, to establish procedures. No such procedures have been established. They continue to rely on the fact that the court says something to the defendant at the time of the sentencing that he shouldn't return to the United States without permission. And my contention is that unless this court takes the step of actually enforcing the compliance with those statutes by, in essence, vacating revocations where there has been no compliance with those statutes, that they're going to continue to rely on that and that these statutes- Does that require us to overrule our prior precedent? Ortega-Brito? I don't believe so. I believe it would simply give force, if you will, to what this court stated in Ortega-Brito, that the district courts and the probation officers ought to comply with those statutes. I don't think you have to overrule it. In that instance, I think you affirmed, primarily because it was, I think, the first time the issue had been brought up before this court, and it was very clear that there was no compliance with those statutes, as in this case, there's no compliance with the statute the magistrate judge recommended, and the district judge affirmed the fact that there was no compliance with the statutes. But unless and until this court undertakes to give some meaning to Ortega-Brito by vacating convictions where there has been no such compliance, I think we're going to have the same problem. They're just going to say, well, it's harmless error, or close enough, if you will, for government work. And that is going to result, I think, in these two statutes in particular with regard to these types of cases, where defendants are being returned to Mexico, that they don't have to comply with it. And you can just look at the transcript and decide that that's enough. Counsel, before you conclude your argument, would you address your contention under Vargas-Amaya? Yes. In Vargas-Amaya, my understanding is that in order for a warrant to be valid, the petition to revoke has to be submitted under oath. Or under penalty of perjury. That was not done in this case. Counsel, in your mind, do you see a distinction between revocations that occur while the supervisee is under the pre-trial, under the supervised release period, as opposed to one that's being effectuated after the period expires? Do you understand my question? I don't know whether or not the warrant is a valid warrant at the time that it is issued. And regardless, I understand what the government's answer was to my motion to dismiss on that basis. But the essential holding, I think, of Vargas-Amaya is that for a warrant to be valid on a petition to revoke, it's got to be made under oath, otherwise the district court acquires no jurisdiction. And I think it's particularly egregious in this case where you have Mr. Ortunio Ygareda arrested in California and on the basis of a warrant and a petition filed in Arizona, improperly we submit, he is hauled from California to Arizona, has his petition revoked and has a sentence imposed, all on the basis of a warrant that was at least under Amaya-Vargas without jurisdiction. Counsel, is it your argument, then, that the statute that gives the court authority to revoke supervised release does not have an inherent jurisdictional predicate? That doesn't seem to be the holding of Vargas-Amaya. In order for the court to acquire jurisdiction, I think, there's no continuing jurisdiction, I think, unless there's been a petition filed and a warrant issued and that defendant is hauled before the court to answer that petition. I understand that argument where the supervised release period has expired, that there is no jurisdiction hook unless there has been a warrant. But I'm not sure that that same argument pertains if the court is exercising its statutory authority while the supervised release period is in effect. I think even if the defendant is under supervised release, if he's in another jurisdiction, in order for, in this instance, Arizona to acquire jurisdiction, to have that defendant brought to Arizona, there's got to be a petition and a valid warrant issued. So you read Vargas-Amaya that broadly? Yes, I do. Any other questions? All right, counsel, we'll give you a minute for rebuttal since we used so much of your time. Thank you. May it please the Court, my name is Nathan Leonardo and I'm representing the government in this case. First, I want to clarify that the district court's decision in this case, or the notice, the verbal notice that it gave the defendant about not returning to the United States or else he would be in violation of his conditions of supervised release, occurred on August of 2000. The defendant was then deported on August of 2001, and the Ortega-Breda decision did not come out until 2002. So it's not as if the district court was ignoring this Court's admonition that the court in probation should be released. It's more like giving written notice instead of just oral notice. Well, don't leave that point too quickly. You say that we can just extend that case to these facts because, as I understand the government's argument, even though the statute specifically requires the condition to be given in writing, that we have one case that said where you gave them orally, that doesn't automatically, our words, automatically get you home free. But was what was the specific charge that he was that he was violated for? In this case? The specific charge for which he was violated. It was that they not commit another Federal, State, or local crime? Yes. In the oral presentation of the judge to the defendant, did he make those specific oral comments? No. He actually was even more specific and more descriptive about the activity that would, that the defendant actually committed in this case. No. It was something different, and that was a specific crime, which was? Which was reentering the United States without documentation. Okay. So if you tried to violate him on entering the United States without authority, then the case which excuses the specific statutory language would not automatically terminate. But that isn't the situation here. He wasn't told orally, you shall not commit another Federal, State, or local crime. Correct? That's correct. And yet you're violating him for not committing another Federal, State, or local crime. I don't see how this case will help you unless we extend it even further and overrule our reasoning that you got the information orally, therefore we don't have to give it in writing. Your Honor, first I want to take back my statement that he was not told orally that he shall not commit another crime. Because I believe that, and I don't have the citation right now, but I believe that's typically mentioned orally to the defendant at the time of disposition. You think it was? I read it and didn't see it. I don't want to say that it wasn't. If you know it, please get it out now before us and read it to us. In any event, I do think that's... Wait a minute. Before you, in any event, let's identify this. You've indicated, if I understand you correctly, you've represented to us that at the time of the sentencing, the district judge said you shall not commit any other Federal, State, or local crime. I didn't find that. I didn't. No, I didn't represent that yet. I just said that I didn't want to represent that he didn't tell the defendant that he should not commit another crime. So I'm going to look for it right now. Let's assume he didn't state it then. Why should we extend the reasoning of the case to this case? Well, because in this case, he was violated for the actions that he was specifically advised that he could not take, and it would be a violation of his supervisory release conditions. Well, I think that's a very good legal argument. But the purpose of giving this written notice is that people that don't go to law school and some who haven't gone to school at all get something in writing that they can have with them. And that's what the Congress wanted us to do. For reasons unknown to me, because I was not involved, we've decided to extend that where the person specifically gives the oral requirement. But that isn't here. So why shouldn't we enforce what Congress told us to do? I think, Your Honor, you make a good point. And I think in this case, oral notice was even better than written notice for somebody who's uneducated in the law. This was a Spanish speaker from Mexico, and a written notice in English would be far less valuable to him than a translated oral notice or two of them. The government doesn't have to give them in English. The government can translate it for him. That's not a problem. Or he can get it translated, but at least it would be in writing. So you would extend it, then, anytime there's a Spanish-speaking defendant and their notice would be in English, that the government is excused from giving the written notice. That would be how the case would write? If there was no. I'm simply pointing out that in this case, there was two translated oral notices, and I'm unaware of any practice of giving translated written notices. I suppose that is possible. But technically under the law, an untranslated English written notice would comply with the statute. So if you were writing the case, you would extend our prior precedent to those situations in which the defendant does not speak English. Therefore, we don't have to give them a written notice. No. I think that the precedent does not need to be extended. I think that under Ortega-Brito, this case is the same situation, essentially. Well, it is the same situation. That defendant was arrested for illegally reentering the country, and that was the violation that he was being at a hearing for, and he was orally advised not to do that. No. If he had been arrested for burglary, then you'd have a very different situation, wouldn't you? You don't have any warning at all. I would agree with that, unless you hear that the judge happened to pick the one thing that Mr. Artuno did later on when he came back here. Mr. Artuno. Yes, which is typically what happens in these cases. That one thing is what the violation is. But you're right. I think that if it was a burglary, we would have a different situation. Unless, and I haven't had the chance to look through the transcript, but unless the judge did give a blanket warning. So what you're really asking us to do is to suggest that even if the judge fails to give the general conditions that are in, that should have been in the written notice, if he advises as to the specific crime that later on the defendant happens to commit, that that should be sufficient. Yes. As a matter of fact, I would say that somebody on, what's the point of supervised release if a defendant can commit a crime? I don't necessarily think notices is even, should it be necessary to notify somebody not to commit another crime while you're on supervised release? Of course you can't commit another crime while on supervised release. It's almost commonsensical. But in this case, the defendant was specifically warned of the crime that he actually committed. Counsel, do you remember the nature of the advice that was given in Ortega-Obrito? Do you recall? I can't recall if it was specifically do not reenter the country or if it was a blank. Well, let me read it to you and then you tell me what your reaction. The court said, he was explaining supervised release. It's like parole. If you do something wrong, you go back to jail. Do you understand, defendant? Yes. How do you compare that to the circumstance we have today? Well, that's kind of the commonsensical warning that I guess that I was just talking about. That's a more broad warning than what we have here. Here we have, I think, an even better warning because it specifically says what the defendant would be violated for or had to come before the court again for, and that's what the defendant did. So it was a specific conduct committed by the defendant that he was warned against doing, which was even better than just a blanket general warning not to do anything bad, which is what I guess that warning was. I was reading from 1139 of Ortega, which appears to reflect what the warning the court gave in that case. In any event, could you address Vargas-Amaya before you conclude your argument? Yes. Vargas-Amaya, I think, is specifically limited to the situation it deals with, which is when the term of supervised release has expired and then the district court has to extend its jurisdiction over a former supervised releasee. In this case, the defendant was on supervised release, and because he was being supervised by the court, the court certainly had jurisdiction over him. Vargas-Amaya, if anything, would go towards the validity of the warrant or the warrants that served as the basis for him to be arrested in California and brought to Arizona. But once he was in Arizona, even if that warrant was invalid, the court had jurisdiction over the defendant. But the language of Vargas was a little broader than that. It didn't limit the requirement for oath and affirmation to the situation where the revocation took place after the supervised release term, at least in the language it didn't. As far as the validity of the warrant? As far as jurisdiction. Well, it did deal specifically with that statute, the section of the statute that deals with extending, or I think it's entitled delayed revocation, and it deals with extending jurisdiction after the supervised release term had expired. So you – it's your view that the same result would not portend if the supervised release action were during the period of supervised release? That's correct. Then we would have a problem, I believe, if he was – if he – if this was after the supervised release term had expired. But in this case, it was during, which is not the case in Vargas-Amaya. And that makes sense, because people who are on supervised release or probation don't enjoy the same type of – well, first, they're being supervised. Second, they don't enjoy the same kind of constitutional protections that the average citizen does. Could I ask you a question about that? I take it the statutory authority that you argue that the district court had is Section 3606. Yes, Your Honor. Who arrested him? The U.S. Marshals. Now, 3606 says an arrest can occur without a warrant by a probation officer. That's correct. The U.S. Marshal is not a probation officer. How – how does 3606 help you if the statute itself doesn't provide for the arrest that occurred in this case? Well, I think it – it helps in showing the inherent jurisdiction of the court when somebody is on supervised release. But it is an inherent authority. You said you're going on the statutory authority. But the statutory authority doesn't help you because it's restricted to arrests by probation officers. Well, my argument isn't necessarily that the arrest itself was valid, but simply that the court, once the defendant was in front of him, and this is what we – we see in the chain case where the defendant was abducted from Mexico, illegally brought before the court, and the Supreme Court said that the court still had jurisdiction over this individual, despite how he was arrested and how he – how he came to be in front of him, it had jurisdiction. And I think that's the same here, is that it doesn't matter whether or not the arrest was valid, but once the defendant was in front of the court, the court had jurisdiction to revoke his supervised release. So you'd read out the necessity of a warrant, an oath, and affirmation altogether. I mean, they – anybody could have grabbed him and pulled him in because somehow the district court has inherent authority over the defendant, regardless of whether his constitutional rights have been violated. No, I think there are other remedies for an illegal arrest or a warrantless arrest, but there's not a remedy in this case, and the remedy is not dismissing the case altogether. What would those remedies be? I mean, if you – Well, there would be civil remedies, perhaps. But he couldn't challenge the warrant? There would be – Is your argument that he could not challenge the warrant at all? No, he can challenge the warrant, and if he wins, he has – there are other remedies, but they include things like suppressing evidence, civil remedies. But there is no remedy in this case, no evidence to suppress. You know, and I'm not conceding that the arrest was illegal, necessarily, but my argument is that it doesn't matter to the case, because the district court, once the defendant was in front of him, had jurisdiction to revoke the defendant's release – the supervised release. The court was supervising the defendant at the time. If he had – I mean, the court has to have jurisdiction in order to effectively supervise. Why even issue a warrant, then? If the warrant is – if the warrant is superfluous, then why even issue a warrant? Well, to comply with the statute. A warrant is required, and that's why – what I'm saying is that there are other remedies, but there's no remedy in this case. But once a warrant is required, then are you saying that the constitutional accoutrements of a warrant don't make any difference, the oath and affirmation? Well, they do make a difference. They don't make a difference in this case. Because there is no remedy in this case, it wouldn't make a difference. But a warrant isn't required. Under 3606, a probation officer can arrest a supervised releasee without a warrant. But as Judge Wallace pointed out, that's not what happened in this case. That's not what happened in this case. And so what I'm saying is that the arrest may have been invalid, but it doesn't matter in this case. The arrest was not pursuant to a sworn petition. In fact, I mean, theoretically, if you look at it, the defendant could have been brought in illegally, say the warrant was invalid. Then the defendant brings that up, the court releases the defendant, the probation officer arrests him right there on the spot without a warrant, and we'd be in the same situation. Do you think they require a warrant? Well, to make sure there's a probable cause. I see. So if a renegade probation officer says, I want to hassle this fellow, and he calls his favorite deputy and says, go run him down and bring him in, the court has authority to do that. We may not like it, but they've got authority to do that because he's on probation. We don't have to say any probable cause. We can arrest him and hassle him and bring him in. Well, it strikes me that that warrant requirement is in there for protection. You would rule it out, if I understand it correctly, to that anybody can do it, not just a probation officer. Well, I think your example shows that what we're talking about here is kind of a technicality because the probation officer is sending out the one who's out to get this defendant is sending out the marshals. Say it's not a probation officer. Say it's somebody that doesn't like him. Isn't even a government person. Calls his favorite detective and says, I want him hassled. It seems to me that there's a reason for requiring warrants. And I think that is the reason. Make sure that there's a reason why you're going to arrest them. That's correct. And we only give an exception to that to probation officers by the statute. Right. So in your example, the probation officer could have just gone. I changed my example. Okay. Well, I think you're right. And it is a safeguard. And when that safeguard is, you know, not complied with, there are remedies such as suppression of evidence, things of that nature, civil remedies for a legal arrest. But in this case, the defendant's goal or what the defendant's asking for is not one of the possible remedies. Well, the Fourth Amendment usually doesn't say to defendants, it's okay, you can go sue civilly. There, under the guidance of the Supreme Court, there's more to it than that. In this particular situation, the only remedy that the person would have for this warrantless arrest would be to sue under civil law, right? No. Oh, in this situation? Yes. I'm not an expert on remedies, but it seems. Why is this pursuing your civil remedy suggestion? Okay. Thanks for your help. Let me just ask you this question before you conclude, counsel, and I did want you to discuss the evidentiary issues as well, which we haven't gotten to. But how does 18 U.S. Code section 3583E apply vis-à-vis the warrant requirement in this case? Unfortunately, Your Honor, I don't have the statutes in front of me. I'm not sure. Okay. That section seems to give the court the power to revoke supervisory lease. It does not discuss the warrant requirement. But so how do those two sections interplay in your mind? Well, in my mind, that's the section that gives the court inherent jurisdiction over the defendant because it's the statute that allows the court supervision and allows the court to revoke the defendant's probation or supervisory lease. And it only makes sense that that's the way it is because otherwise there would be no way to, you know, there would be no way to effectively supervise a defendant. Okay. Could we address the evidence that was admitted briefly? What evidence was actually admitted into evidence? Would you agree that the A file was not admitted into evidence? No. I actually did want to clear that up because the agent testified about the documents within the A file, but also documents were admitted from the A file. Most importantly, the I-213, which was the arrest report from when the defendant reentered the country illegally, was admitted into evidence as Exhibit 4, and that's on page 22 of the ER. Oh, excuse me. 23. Okay. And it indicates that all the circumstances about how they found the defendant in the United States, how he had no documentation. 23 of the excerpt? Yes, Your Honor. At the bottom of the page is when the actual exhibit was admitted in the preceding page or two. Where is that exhibit in the excerpts of the record? Where is that actual exhibit? You know, Your Honor, I'm not sure that I don't think it was actually put in the ---- That's the difficulty with this case. But it ---- I see. But the officer does describe it in about two or three pages here prior to the admission of the exhibit, and it also describes the ---- Is that Exhibit 4 in the district court record? Yes, Your Honor. We don't have that. I happen to have the district court record, and it's not there. I don't ---- I can't explain that, Your Honor. But the district court have a separate file that exhibits would be lodged in? I wish I knew more about the paper, the filing practices of the district court, but I don't. It does say on the record, though, that he goes through and describes everything within that document. The government moved to admit it. There was no objection. Counsel, is it your contention that Exhibit 4 is sufficient to demonstrate that Mr. Artunio violated the terms of his release? I believe that is sufficient, but I don't think that that's all the evidence. So what else do you have? There is a warrant of removal or deportation, which is Exhibit Number 3. And that's not in the ER, but that's discussed in the record on page 19 of the ER. And it indicates the defendant was deported and the circumstances and where he was deported from and the date. Also, there was testimony about Exhibit 1 that ---- about the defendant's identification tying into the A file and all the documents therein. Okay. But I'm looking for the actual evidence that he violated U.S. law after he was released. And that would be the arrest record, which is Exhibit 4, and the testimony of the border patrolman. Is that right? And the agent also testified that the defendant had no documentation based on his A file, and that was part of the arrest record. But also the defendant's presence in court corroborated all of these documents and all of this testimony. Counsel, if Exhibit 4 was entered in evidence, as it indicates, but it's not there, maybe the government, because your case may rely upon whether or not we read the A file, maybe the government would like to check and see what happened to that exhibit and if you can resurrect it somewhere to have it shipped to the court of appeals so we can review it. I would be happy to do that, Your Honor. Counsel, was Mr. ---- this is just curiosity. Was Mr. Artunio convicted in California of re-entry, illegal re-entry? I mean, based on the testimony. Why didn't the government produce the conviction, the judgment? Well, I mean, here's the evidence, but it wouldn't have taken anything, would it, to have gotten a hold of an AUSA someplace in California and had him fax a judgment? I really don't know. It's outside of the record, and I'm not familiar with the answers to those questions. All right. Thank you, counsel. Rebuttal. I'm going to waive my rebuttal. I think, unless there's a specific question that the Court wants me to answer. It appears there are none. The case just argued is submitted for decision by the Court. The next case.
judges: Wallace, Rawlinson, Bybee